Frances M. Cole v. Commissioner.
Cole v. Commissioner
Docket No. 69586.
United States Tax Court
T.C. Memo 1960-278; 1960 Tax Ct. Memo LEXIS 1; 19 T.C.M. (CCH) 1537; T.C.M. (RIA) 60278; December 30, 1960
James A. Poynor, Esq., 508 1/2 Joplin St., Joplin, Mo., for the petitioner. Claude R. Sanders, Esq., for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: Respondent has determined that petitioner is liable for $12,000 of taxes as transferee of that amount from her husband who, at the time of the transfer, owed income taxes and additions to the tax totaling $46,049.94. The sole issue for our determination is whether petitioner *2 is liable as transferee in the amount of $12,000. Findings of Fact Some of the facts have been stipulated, are so found, and are incorporated herein by this reference. Frances Cole (petitioner) and Charles N. Cole are husband and wife, residing in Joplin, Missouri. Charles filed no Federal income tax returns for the years 1951, 1952 and 1953 and thus pursuant to stipulation of the parties in Docket No. 65084 we entered a decision that the deficiencies in income tax and additions to the tax of Charles for the years indicated were as follows: [1]
Section
Section
Sec. 294
Section
Year
Income Tax
291(a)
293(b)
(d)(1)(A)
294(d)(2)
1951
$ 1,432.82
$ 358.21
$ 716.41
$ 125.31
$ 83.54
1952
3,488.97
822.24
1,744.19
310.36
206.91
1953
19,350.92
4,837.73
9,675.46
1,737.94
1,158.63
$24,272.71
$6,018.18
$12,136.06
$2,173.61
$1,449.08 The amount of $46,049.64 remains unpaid. During the years for which the tax was owing Charles operated a filling station and liquor store on the real estate where he and petitioner *3 resided. The property had been deeded to petitioner in her name alone on February 8, 1950, by a third party at an indicated price of $1,500. Carthage Loan and Investment Company, Carthage, Missouri, advanced the following sums, the second and third advances each being applied so far as necessary to discharge the balance due on the preceding advance: Principal
Proceeds of Next
Note No.
Date
Advanced
Repaid
Advance Applied
1777
7/21/50
$ 8,000
$ 749.80
$ 7,251.20 *
1888
7/20/51
12,000
1,550.00
10,450.00 *
2037
4/15/53
15,000
3,000.00 **
0.00
For each advance petitioner and Charles signed a joint promissory note secured by deed of trust on the above mentioned property (including buildings and certain service station equipment thereon). The deeds of trust were recorded. On August 18, 1955, when $12,000 was due on the last mentioned note, Charles gave Carthage $12,000 in cash to discharge the balance owing. The final note was then marked paid *4 and canceled and the deed of trust was discharged and its cancellation noted at the local recorder's office. On August 18, 1955, Charles owed $16,323.64 to trade creditors in addition to the above mentioned Federal income tax liability and the balance in his and petitioner's joint checking account (the only bank account disclosed by the record) was $1,153.04. Charles was insolvent on that date. Respondent's agents have made continued and extensive efforts to collect the income tax and additions to the tax owed by Charles for the taxable years 1951, 1952 and 1953 but the agents have been unsuccessful. The payment by Charles of $12,000 on August 18, 1955, to discharge an encumbrance upon his wife's real estate was a transfer in fraud of his creditors. Opinion Respondent seeks to collect Charles' tax debt from petitioner under section 311(a) of the 1939 Code. [2] Section 119(a) of that Code places the burden of proof on the issue of transferee liability upon the Commissioner of Internal Revenue. *5 It is well settled that section 311 and its predecessors have created no new substantive liability but have simply provided an effective, summary means for enforcing the already existing liabilities of transferees in the same fashion that taxes could be collected from their transferors. . The existence and extent of such liability is, as always, to be determined by applicable state law. . The parties agree that this makes the statutes and decisions of Missouri controlling here. Chapter 428, Revised Statutes of Missouri (1949), provides: 428.020. Conveyances to defraud creditors, void Every conveyance or assignment in writing or otherwise, of any estate or interest in land, or in goods and chattels, or in things in action, or of any rents and profits issuing therefrom, and every charge upon lands, goods or things in action, or upon the rents and profits thereof, and every bond, suit, judgment, decree or execution, made or contrived with the intent to hinder, delay or defraud creditors of their lawful actions, damages, forfeitures, debts or demands, or to defraud or deceive those *6 who shall purchase the same lands, tenements or hereditaments, or any rent, profit or commodity issuing out of them, shall be from henceforth deemed and taken, as against said creditors and purchasers, prior and subsequent, to be clearly and utterly void. Missouri courts, in line with American courts generally, recognize that a conveyance is fraudulent in law, irrespective of the debtor's actual intent, if (1) it is without adequate consideration, and (2) it is made while the debtor is insolvent or it renders him insolvent. (Mo. Sup.)., (Mo. Sup.); and cf. Bartmer Automatic Self Service Laundry, Inc., 35 T.C. - (November 23, 1960). The Federal Government became a creditor of Charles by March 15, 1952, 1953 and 1954 for the tax years 1951, 1952 and 1953, respectively, (C.A. 8), and may thus be treated as an existing creditor on August 18, 1955. It is settled in Missouri that such a creditor establishes a prima facie case that there has been a fraudulent conveyance simply by showing that a gratuitous transfer has occurred. *7 (Mo. Sup.); (Mo. Sup); (Mo. Sup.); See also our decisions in , and , both applying Missouri law. (There are some suggestions to the contrary in our decisions in , revd. on another issue (C.A. 2), and , but these were decided without reference to state law and were prior to the Stern decision.) Petitioner maintains that the evidence fails to establish that the $12,000 was paid from Charles' funds rather than petitioner's, but the only record evidence on this point shows that Charles actually paid the $12,000 to the mortgagee on August 18, 1955, by handing $12,000 in cash to John C. Bunch, the head note teller for the Carthage Loan and Investment Company, on that date and thereby satisfying the note and deed of trust. This evidence amply satisfies respondent's burden of proof on this score and petitioner has not materially weakened such proof by showing that she *8 was with Charles when this payment was made. Neither petitioner nor Charles testified. If this payment had in fact been made with petitioner's funds she and her husband were the persons best qualified to make proof. Respondent satisfied his burden by showing the physical circumstances of the payment and it would be unthinkable for us to require respondent to prove ever more negatives as petitioner suggests sequences of rather remote presumptions. We refuse to so presume. Petitioner had ample opportunity to show her ownership of the $12,000 cash if that were the fact. She has not done so, and further, the record discloses no source of income nor any independent means of petitioner. Petitioner next argues that the payment, even if from Charles' funds, was made in discharge of a bona fide pre-existing debt and was hence valid under Missouri law, even if the transferor was insolvent. See (Mo. Sup.), the most recent among numerous decisions on point. Petitioner urges (but offered no proof) that she merely acted as surety for Charles in securing the advances from Carthage. We have concluded that the record proves otherwise. The revenue *9 stamps on the February 8, 1950, deed to petitioner indicate that $1,500 was paid for the land. The fact that this land was acceptable security for a $15,000 loan in April 1953 strongly suggests interim improvement and supports the statement of petitioner's counsel at the trial of this case that the money was borrowed to build a filling station, other buildings and a residence for Charles' family on the land owned by petitioner. These may well have been "purposes of Charles" as petitioner urges, but they were also necessarily enhancing the value of land held in petitioner's sole name. Petitioner now urges that her counsel's entire opening statement at the trial herein was simply a statement of expected proofs. But the statements above were couched in no such language and it is axiomatic that courts and opposing parties are entitled to rely on admissions of counsel made during the trial of a cause; they are officers of the court representing their client, and their admissions so made bind their principal. (Mo. Sup.). We refuse to make the possibilities for entrapment as easy as petitioner suggests, especially in a case such as this where *10 the record tends to support the opening statement admission which petitioner now seeks to disclaim and where petitioner had opportunity to, but offered no record proof or explanation. See (Mo. Sup.), where the court aptly said: It is well settled that "the failure of a party having knowledge of facts and circumstances vitally affecting the issues on trial to testify in his own behalf, or to call other witnesses within his power who have knowledge of such facts and circumstances, raises a strong presumption and inference that the testimony of such persons would have been unfavorable and damaging to the party who fails to proffer the same." * * * [Citing cases.] It is stipulated that the real estate was owned by petitioner alone, consequently all improvements would rebound to her. There is no indication of any enforceable right in Charles to use the improvements beyond petitioner's mere whim. At this point we feel it appropriate to observe the common sense principle applied by courts in Missouri and almost universally that where the facts underlying a financial arrangement are obscured by a husband-wife relationship, the spouse *11 must affirmatively demonstrate the honesty of the questioned transactions in order to insulate a transfer from the claims of creditors of the other spouse, (Mo. Sup.), and we thus have done no violence to the rule allowing a bona fide preference of creditors. (Mo. App.); ; (Mo. Sup.); Thus analyzed, our case is no different from the many Missouri decisions relied on by respondent which treat as fraudulent in law a husband's payment discharging an encumbrance upon his wife's real estate. (Mo. Sup.); (Mo. App.). See also Britton v. United States (not officially reported) (E.D. Mo., 1958); see also and cases there cited. Cases such as (Mo. App.), are inapposite because there the husband's choate right of curtesy in his deceased wife's real estate was enhanced by his discharge of an encumbrance upon *12 the real estate. We accordingly hold that the transfer here was without consideration and respondent has affirmatively shown that Charles was insolvent on August 18, 1955, or at least was rendered insolvent by his transfer on that date. Three different trade creditors testified, without contradiction, that Charles had owed them money for items sold on open account through 1954 and that they had made repeated unsuccessful efforts to procure payment of these debts. Two of these creditors eventually reduced their claims to judgments which have remained unsatisfied. Insolvency may be determined by a practical rather than theoretical standard. When a debtor is ostensibly without means to pay his just debts and payment cannot be enforced through ordinary legal process the test is necessarily satisfied. ; (Mo. Sup.). See also Bartmer Automatic Self Service Laundry, Inc., supra. There being no indications to the contrary, this insolvency may be presumed to have continued to the present time. . Likewise, we consider to be without *13 merit petitioner's argument (based on the doctrine that a creditor must exhaust his remedies against a transferor before asserting liability against a transferee, (C.A. 2) that while respondent's collection efforts were extensive, they were not exhaustive. We recognize the dictionary distinction between the two words but, in terms of this case, we feel that the difference is more apparent than real. For all that the law requires is such collection efforts as, under the circumstances, appear reasonably likely to be fruitful; it is not mandatory that a creditor go through the motions of issuing execution and having it returned unsatisfied when such a procedure would obviously be futile. (C.A. 5); (C.A. 1). See also . We accordingly hold that respondent has carried his burden under section 1119(a) and shown the conveyance here to be fraudulent under the Missouri statute. Respondent is entitled to $12,000 with interest thereon under Missouri law. *14 (C.A. 5); Tate v. Sanders, (motion for rehearing) (Mo. Sup.). Cf. Leo L. Lowy, 35 T.C. - (December 6, 1960). Decision will be entered for the respondent. Footnotes
1. The total is $46,049.64. The difference of 30 cents from the deficiency determined by respondent is unexplained.↩
*. When the proceeds of the succeeding loan were used to pay off each of these loans, notes 1777 and 1888 and the corresponding deeds of trust were canceled. ↩
**. Prior to August 18, 1955.↩
2. SEC. 311. TRANSFERRED ASSETS. (a) Method of Collection. - The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter * * *: (1) Transferees. - The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter.↩